Argued July 20, reversed and remanded August 30, 1976

STATE OF OREGON, *Respondent,*
*v.*
STEVEN ANTHONY JOHNSON,
MICHAEL SHANE WESSON, *Appellants.*
(No. 1413, CA 5620)
554 P2d 194

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

Defendants appeal from convictions of criminal activity in drugs, ORS 167.207, on the ground that the trial court improperly denied their motion to suppress the fruits of an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

The facts are undisputed. On September 3, 1975, at approximately 8:45 a.m., Officer Fluke of the Oregon State Police observed a vehicle pass by him as he was parked adjacent to a temporary detour section of Interstate 80. He pulled in behind the vehicle and followed it a few miles. He noticed that it had a valid Texas license plate. He was unable to observe any identifying characteristics of the three occupants of the automobile. He observed no unusual activity within the vehicle. Nevertheless, Officer Fluke decided to stop the car to find out whether the driver was in possession of a valid driver's license and vehicle registration. He testified that he had been informed that the state of Texas issued drivers' licenses to individuals under the age of 16 and that he wanted to check whether the driver of this vehicle was 15 years of age. He did not testify that the driver appeared underage and stated he could observe no identifying characteristics of any of the occupants. He observed no violation of law in the operation of the car nor by any of its occupants, and by his own account "routinely" stopped the automobile for the sole purpose of checking the operator's license and vehicle registration.

After Officer Fluke stopped the automobile defendant Johnson got out of the vehicle and produced a valid driver's license and car registration. The officer approached the vehicle to check the registration against the vehicle identification number on the door left open by defendant and observed marihuana seeds lying on the floorboard. He then radioed for assistance and a subsequent search of the vehicle disclosed a large quantity of marihuana.

The trial court found that Officer Fluke had no

reasonable suspicion that defendants were engaged in criminal activity but concluded that the officer was justified in stopping their vehicle for the purpose of verifying the operator's license and the vehicle registration. We conclude that the stop in question was improper.

Recently in *State v. Gibbons,* 21 Or App 339, 535 P2d 561, Sup Ct *review denied* (1975), we considered a somewhat similar situation. Though in disagreement on the application of the law to the particular facts, the opinion manifested substantial agreement as to the Oregon rule. This was well summarized by Chief Judge Schwab in his dissent as follows:

"Were we writing on a blank slate, there would be much to be said for a rule that would permit law enforcement officers to stop any motor vehicle using Oregon highways at any time for any reason. The use and abuse of motor vehicles present unique contemporary problems, the subject of extensive attempted legislative control. *See,* ORS chs 481-486. But much of the attempted control is an empty gesture if, for example, the driver whose license has been suspended has a constitutional right not to be stopped and asked to display his license. Motorists using our highways are deemed to consent to 'long-arm' service of process, ORS 15.190; such statutes have been held constitutional. *Hess v. Pawloski,* 274 US 352, 47 S Ct 632, 71 L Ed 1091 (1927). Motorists using our highways are deemed to consent to certain chemical intoxication tests, ORS 483.634 et seq; such statutes have been held constitutional. *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969). Could it not likewise be concluded that motorists using our highways can be deemed to have consented to momentary detention sufficient to insure compliance with traffic control laws? *Cf., People v. Ingle* [369 NYS2d 67, 330 NE 2d 39], 17 Crim L Rptr 2084 (NY Ct App 1975).

"But the slate is not blank. *State v. Cloman,* 254 Or 1, 6, 456 P2d 67 (1969), holds that before law enforcement officers can stop a motor vehicle they must have 'reasonable suspicion that the car or its occupants have a connection with criminal activity.' *Terry v. Ohio,* 392 US

1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), adopts substantially the same rule governing police stops of individuals afoot. Thus, I proceed on the assumption that, regardless of the possible merit of drawing a distinction, the constitutional rule applicable to motor vehicle stops and to stops of individuals not in motor vehicles is the same.

"In applying the rule, I think it should first be clearly established that an officer's statement that he did not personally suspect criminal activity is not controlling. Just as we do not regard a policeman's statement that he does have grounds to search as necessarily controlling, *e.g., State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975), we should not necessarily make a contrary statement controlling. Many of our cases so state or at least imply. *State v. Brewton,* 19 Or App 899, 529 P2d 967 (1974), Sup Ct *review denied* (1975); *State v. Evans,* 19 Or App 345, 527 P2d 731 (1974), Sup Ct *review denied* (1975); *State v. Holmes,* 17 Or App 464, 522 P2d 900 (1974); *State v. Childers,* 13 Or App 622, 511 P2d 447, Sup Ct *review denied* (1973); *State v. Temple,* 7 Or App 91, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). *See also, State v. Cloman, supra.* The test should be: Would a reasonable person, knowledgeable or experienced in law enforcement, reasonably conclude from the facts perceived by the officer that there was a basis for a search or stop. In short, the test should be an objective one based on a reasonable-person standard, rather than a subjective one based on the conclusions of the individual officer.

"The question then becomes whether the facts confronting an officer give rise to authority to search based on probable cause or authority to stop based on reasonable suspicion.

"* * * * *

"Remembering that facts can be capable of alternative interpretations, I think the better way to articulate the test is: (1) if the facts, evaluated objectively, indicate that it is as likely or more likely that a person has committed a crime and possesses evidence of that crime, this constitutes probable cause to arrest and search; (2) if the facts, evaluated objectively, indicate there is any reasonable

possibility that a person has committed or is about to commit a crime, this authorizes a *Terry*-type momentary stop of a motor vehicle or of an individual." 21 Or App at 351-54.

*See also: State v. Gwinn,* 12 Or App 444, 506 P2d 187, Sup Ct *review denied* (1973).

Applying the rules set forth above, which we adopt, to the facts of this case, we can find no reasonable basis from the facts perceived by the officer from which he might objectively have concluded there was a reasonable basis for him to stop the vehicle. Here there is no claim of stopping the vehicle at an established license checkpoint or for a periodic registration check. *See, State v. Cloman,* 254 Or 1, 6, n 2, 456 P2d 67 (1969). It follows from the foregoing that the motion to suppress should have been allowed.

Reversed and remanded.