Argued November 15, reversed and remanded December 27, 1976,
reconsideration denied January 26, review denied March 15, 1977

STATE OF OREGON, *Appellant,*

*v.*

IVAN IVY JACKSON, *Respondent.*

(No. 76-2011, CA 6457)

557 P2d 691

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*F. William Honsowetz,* Eugene, argued the cause for respondent. With him on the brief was Gardner & Honsowetz.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

LEE, J.

**LEE, J.**

Defendant was charged in a two-count indictment with violating ORS 166.270 and 166.240 which, respectively, prohibit the ownership or possession of "[any firearm] capable of being concealed upon the person" by a convicted felon, and the "carrying" of a concealed weapon. Prior to trial defendant moved to suppress the firearms upon which the charges were based, alleging that they had been discovered as the result of a warrantless search "not incident to any lawful arrest, and not justified by the existence of probable cause, any exigent circumstances, or reasonable suspicion that would [have permitted] a stop and frisk search." In response to that motion, the state filed a "memorandum in opposition" in which it asserted that the firearms in question were the products of a search made for "safety purposes" as a result of defendant's "suspicious actions" *subsequent* to having been subjected to a temporary "stop" by Eugene police officers. Following a hearing at which both the arresting officer and the defendant appeared as witnesses, the circuit court granted the motion to suppress.

The state appeals pursuant to ORS 138.060(3), contending that under the totality of the circumstances existing at the time, the "frisk" which led to defendant's arrest was a "reasonable" intrusion violative of neither the Fourth Amendment to the United States Constitution nor Art I, § 9 of the Oregon Constitution.[1]

In effect, the testimony of Officer Mason indicates that he and a second officer initially encountered the defendant and two companions in the course of

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." US Const, Amend IV.

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *." Or Const, Art I, § 9.

[ 881 ]

responding to a call from a Eugene tavern at approximately 1:30 a.m. on April 1, 1976. Contacted inside the tavern, defendant and his companions were told that the establishment was closing and were requested to finish their drinks and depart. The officers then proceeded outside where they waited for defendant and his companions to depart in order to insure that there would be "no problems until they left." When, shortly thereafter, defendant and a companion left the tavern they were seen by the second officer to enter an automobile bearing expired license plates.

Based upon the expired plates, the second officer, whose own patrol car was then blocking the exit of the vehicle occupied by defendant and his companion, approached the vehicle and obtained the driver's license of defendant's companion who was seated in the driver's position. Having secured that license, the second officer returned to his patrol car; shortly thereafter defendant's companion alighted from the detained vehicle and joined the second officer at his car. While doing so, defendant's companion left the door on the driver's side of the detained vehicle open. Through that open door, Officer Mason observed the defendant seated on the passenger's side of the vehicle

"* * * bent over slightly to the front. He had his right leg retracted up against the front of the seat and the left leg extended. He had his left hand inside * * * the right boot with the right hand pulling the pants leg of his right leg up."

Having made that observation, Officer Mason ordered defendant to take his hand out of his boot and to keep both hands where they could be seen. At that point, according to Officer Mason, defendant looked at him and "pulled his pants leg back down over his boot and began scratching his leg." Defendant was immediately asked to step out of the vehicle. A pat-down search conducted upon defendant's exit from the car produced a gun in his right boot and another in his hip pocket.

■ That the initial detention of the vehicle which

[ 882 ]

defendant was occupying as a passenger, based as it was on the absence of valid license plates, was itself lawful, is undisputed. Defendant and his companion, due to their presence in what appeared to be an illegally operated motor vehicle, were subject to being detained temporarily by the investigating officers.[2] The crucial question is whether Officer Mason was authorized to conduct a "frisk" of the defendant based upon facts that arose subsequent to the detention.

Enacted in an attempt to codify a principle of constitutional law set forth in *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), and *Sibron v. New York,* 392 US 40, 88 S Ct 1889, 20 L Ed 2d 917 (1968),[3] ORS 131.625(1) specifically provides that:

"A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably

---

[2] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

ORS 131.605(4) and (5) define two of the relevant terms:

"(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625.

"(5) A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

*See Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969); *State v. Johnson, Wesson,* 26 Or App 599, 554 P2d 194 (1976); *State v. Valdez,* 27 Or App 329, 556 P2d 132 (1976).

On April 1, 1976 the operation of an unlicensed motor vehicle constituted an "unclassified misdemeanor" punishable by a fine of not more than $400 and/or imprisonment in the county jail for not more than one year. *See* former ORS 481.202, 481.990; ORS 161.545, 161.555.

Nothing in the record indicates, and the court below did not find, that the vehicle code violation was relied upon as a pretext for a general exploratory stop and search.

[3] Commentary, Proposed Oregon Criminal Procedure Code 27-29, § 32 (1972).

suspects that the person is armed and presently dangerous to the officer or other person present."[4]

A "frisk" may, therefore, accompany an investigatory stop based on a reasonable suspicion that a car or its occupants have a connection with criminal activity when the detaining officer reasonably believes, "under the totality of the circumstances" (ORS 131.605(4)) existing at the time he makes the limited search, that the suspect confronting him is "armed and presently dangerous."[5] The court below apparently concluded that under the circumstances leading up to the "frisk" in this case, as related by Officer Mason, a reasonably prudent man would not have been warranted in the belief that the defendant was armed and thus constituted a danger to the safety of those involved in the lawful "stop."[6] We cannot agree.

---

[4] ORS 131.605(2) defines a "frisk" as "an external patting of a person's outer clothing."

[5]
"* * * [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.* * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. * * *" *Terry v. Ohio,* supra, 392 US at 27. (Emphasis supplied.)

[6] The circuit court specifically held

"* * * the evidence we have is that the Officers for some reason went to a [tavern where they found defendant and his companions] * * * and apparently the defendant and his companions give them no difficulty * * * there's no disorderly conduct, and as far as the Officers know so far as the evidence in the case is concerned * * * these are law-abiding citizens * * * as they come out and the vehicle that they're in is blocked. One of the Officers interrogates the driver * * * this defendant is in the car and he's reaching down, he could have been doing all number of things scratching his foot or decided to take his shoes off, he could have decided to pull his pant leg out from his boot or put the pant leg in—but there being in the evidence no reason that the Officers think that this individual is one that's dangerous, that he has a criminal record or that he may be engaging in illegal conduct there. If

■ ORS 131.625(1) sets forth a standard of "reasonable" police conduct commensurate with the constitutional standard enunciated in *Terry v. Ohio, supra,* and specifically provides that an officer need only "reasonably suspect" that a lawfully detained citizen is armed and dangerous before proceeding to undertake the precaution of conducting a limited pat-down search for weapons. The officer need not wait until he becomes absolutely certain that a danger to his own safety, and the safety of others, presently exists before taking that action.

In the instant case, where the "stop" was made during the hours of darkness after defendant had been seen departing from a nearby tavern, the nature of his act while being observed by Officer Mason—i.e., reaching into his boot, a place where a weapon might conceivably be hidden—was sufficient to give rise to a "reasonable suspicion" that he was armed. Officer Mason was, therefore, entitled to proceed to protect himself and the other officer present by subjecting defendant to a "frisk"; the weapons discovered were therefore lawfully obtained and are admissible as evidence.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

I have little doubt but that if the state had made an adequate presentation of the evidence that apparently was available, that presentation would have demonstrated that the police were justified in the "frisk." The fact remains that such evidence was not presented. On the inadequate record the state chose to make, I agree

reaching into his boot gives grounds for requiring him to submit to a Terry-type search most anything he could have done inside of that automobile including reach in the pocket for a cigarette or reach in the pocket for a gum or reach to adjust his belt or reach into the glove compartment of the car if this would justify a Terry-type search, any action he may have taken would justify one and I don't think that's the law."

with the trial judge's reasoning and result as set forth in footnote 6 of the majority opinion.

I dissent.

**TANZER, J.,** concurring.

The record regarding the events at the tavern is deficient and provides no support for the detention and frisk. Therefore I would limit the justification for the search to the events on the parking lot. The expired license plate is itself an infraction and also indicates the possibility of a stolen car. For either reason or both, the police may reasonably inquire. The hand-in-boot incident, while ambiguous, may justify police wariness and the frisk was therefore appropriate.

The trial judge and my astute colleague consider the hand-in-boot transaction to be insufficient to cause the police to have concern for their safety. Acts which would in other situations appear innocent, e.g., reaching into one's pocket as noted by the trial court, might nevertheless cause a reasonable officer to take special precaution while making inquiry of two people, in a tavern parking lot, late at night. In such a situation, I tend to give great latitude for prudence.

Therefore, I concur.