Argued December 21, 1977, affirmed May 8, reconsideration denied
June 14, petition for review allowed December 19, 1978

STATE OF OREGON, *Respondent,*

*v.*

MICHAEL ANTHONY TUCKER, *Appellant.*

(No. 77-04-04696, CA 8748)

578 P2d 803

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

John W. Burgess, Assistant Attorney General, argued the cause for respondent. With him on the brief

were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

Defendant appeals his convictions for burglary and theft on the gound that evidence obtained by the police pursuant to a traffic stop and arrest should have been suppressed. The pertinent facts are as follows:

Portland Police Officers Bell and Jones observed defendant and a companion riding bicycles through a stop sign. Because of the way that defendant and his companion were proceeding, and because defendant was carrying on his bicycle a laundry basket containing an object, the officers were suspicious that the cyclists were engaged in criminal activity unrelated to the observed traffic violation. The officers stopped them. Following the stop, Officer Bell asked defendant for his name and birthdate. Defendant replied that his name was "Bobby Davis" and gave a birthdate. The companion informed the officers that defendant's name was "Michael Tucker." During the ensuing interrogation, defendant steadfastly denied that he was Michael Tucker and gave the officer two different birthdates.

During the interrogation, the officers observed that the object in the laundry basket was a television set. Officer Jones also noticed a bulge in the companion's pocket and a nervous demeanor as if the companion might run. Officer Jones then conducted a pat-down search of the companion which revealed a switchblade knife, tire iron, items of jewelry and some change. The companion was placed under arrest for possession of a stabbing instrument. Defendant was also placed under arrest for running a stop sign and was taken into custody. The officers then transported defendant and his companion to the police station along with the television set, bicycle and other items which were seized. About two hours later, the officers learned of a burglary in which the bicycles and television set had been stolen.

Officer Bell testified that he does not ordinarily stop or cite bicycle riders for traffic violations. Officer

Jones testified that normally he does stop and cite for offenses of this nature. However, both officers testified that in traffic cases, it is their practice to make a custodial arrest, rather than issue a citation, if they are unsure of the person's identity.

Defendant contends that the evidence should have been suppressed because the stop and custodial arrest were in actuality a pretext for investigating to determine whether a theft or burglary had been committed. For purposes of analysis, we separate defendant's contentions into two issues: (1) the validity of the stop and arrest; and (2) the degree of permissible intrusion into defendant's liberty and privacy incidental to the stop and arrest. We use the term "arrest" here to mean only the act of charging the defendant, which would include the issuance of a citation. *See* ORS 484.100 and ORS 133.055. We address the question of the custodial arrest under the second issue. We use the term "offense" to include not only crimes, but also violations and traffic infractions.

In *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978), we held that a stop is legal if the officer perceives a reasonable and objective cause for the stop notwithstanding the officer's subjective reasons. 34 Or App at 26-31. The same rule and reasoning apply to an arrest as that term is used here. *See* cases cited at 34 Or App at 29. Here, the officers had probable cause to make the stop and arrest for the traffic infraction. The only distinction between this case and *Carter/Dawson* is that here the officers not only admitted that the stop may have been a pretext for investigating other criminal activity, but also that it may have been contrary to their common practice. Our opinion in *Carter/Dawson* is premised on the rationale that a stop is valid if the officer had a reasonable basis to believe that an offense had been committed, but that constitutionally "a stop can be no more intrusive than necessarily required by the objective reason giving rise to the stop." 34 Or App at 31. In other words, the constitutional issue that is likely to arise because of a

pretext stop or arrest is not resolved by a factual inquiry into the subjective intentions of the police, but turns on the question of what constitutes a reasonable intrusion into liberty and privacy considering the nature of the offense which objectively gave rise to the stop or arrest.

The dissenting opinion in *Carter/Dawson* suggests, and defendant argues here, that the stop was an unreasonable intrusion because it was contrary to the officers' practice to make such stops. We hold that any stop and arrest is valid if the police have a reasonable and objective basis to believe that the person committed an offense defined by a statute which the police are charged with enforcing. Police practice may be relevant in ascertaining the permissible degree of intrusion into liberty or privacy incidental and subsequent to the stop or arrest. *See* discussion, *infra.* Such police practice, however, is not relevant to determining the validity of the stop or arrest.

The legislature has enacted laws making illegal conduct which some may perceive as having minimal anti-social consequences, prescribing sanctions for such offenses, and authorizing the police, and even private citizens,[1] to make stops and arrest persons for committing the offenses. The substantive proscriptions contained in such statutes themselves constitute an intrusion into liberty and privacy which is constitutionally permitted. If the substantive offense defined by statute is constitutional, then the consequent intrusion resulting from a stop and arrest, which is the minimum police action necessary to enforce the statute, must also be constitutional.

The fundamental defect in defendant's argument, *i.e.,* that police practice governs the validity of a stop

---

[1]ORS 133.220 provides:

"An arrest may be effected by:

"(1) A peace officer under a warrant;

"(2) A peace officer without a warrant; or

"(3) A private person."

or arrest, is that it would result in a de facto, wholesale delegation of the lawmaking function to the police. Officer Bell testified that he does not ordinarily stop and arrest bicycle riders who run stop signs, and thus under defendant's argument Officer Bell *cannot* make such stops and arrests. At least as to Officer Bell the offense has in effect been nullified. Presumably, if Officer Bell were following a departmental policy, then the offense may be nullified as to the City of Portland. Practical questions also arise. Does Officer Bell's policy control the validity of a stop and arrest made by his partner, Officer Jones, who testified that his practice is to make such stops and arrests? Would a Portland Police policy control the validity of stops and arrests made by other police agencies who have concurrent jurisdiction? The police are legislatively authorized to enforce the law. That authorization, coupled with the requirement that the officer must have a reasonable and objective cause, constitutes a reasonable and objective basis for the stop and arrest. Even though police discretion is well recognized and may indeed have been contemplated by the legislature, the statutory offense cannot be nullified by the exercise of such discretion. The stop and arrest were valid.

■ A stop and arrest for a minor offense, however, does not necessarily constitute a license for further intrusion into liberty and privacy. In *Carter/Dawson* we held that there are both statutory and constitutional restrictions on the permissible detention, search and inquiry incidental to the stop.[2] The same is true with respect to an arrest. *See* ORS 484.435, discussed *infra; cf.,* ORS 131.615.

The United States Supreme Court's decision in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), suggests that police policy and practice may be relevant in determining the degree of permissible intrusion. *Robinson* held that a search incident to an arrest was valid. The arrest there was for a traffic offense. The search revealed narcotics

which were the subject of the criminal prosecution on appeal. In a footnote, the court acknowledged that the traffic arrest at issue there was possibly a pretext for a narcotic search. However, the court stated:

"* * * We think it is sufficient for purposes of our decision that respondent was lawfully arrested for an offense, and that Jenks' placing him in custody following that arrest was not a departure from established police department practice.[2] * * *" 414 US at 221 at n 1.

Footnote 2 referred to in the quote is to the effect that the police department had an established policy of making full custody arrests for traffic offenses of the nature charged there.

■■ While police practice may be relevant, we believe the controlling consideration must be whether the intrusion was reasonable under the circumstances. The scope of the inquiry, search and detention should not be "more intrusive than necessarily required by the objective reason giving rise to the stop [and arrest]." *State v. Carter/Dawson,* 34 Or App at 31. Here the intrusion amounted to a full custodial arrest for a minor traffic violation. We believe the statutory standard for such arrests satisfies due process. ORS 484.435(1) provides:

"Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the decision to place the person arrested under full custody arrest is based upon specific articulable facts justifying his being lodged in jail rather than being given a traffic citation as provided in this chapter and released."

---

[2]There is evidence in the record that Officer Bell asked defendant what was in the laundry basket before he asked him for his identification, thus presenting what was possibly too intrusive an inquiry under *Carter/Dawson* following a traffic stop. Defendant does not raise this issue. He argues only that the evidence should be suppressed because the stop and the custodial arrest were illegal.

Defendant told the officers his name was "Davis" and gave two different birthdates. Defendant's companion told the officers that defendant's name was "Tucker," which subsequently proved to be the truth. The officers thus had reasonable cause to doubt defendant's identity. These were "articulable facts justifying his being lodged in jail rather than being given a traffic citation * * *." ORS 484.435. The motion to suppress was properly denied.

Affirmed.

Thornton, J., concurs in the result.