Argued August 22, affirmed December 26, 1978, petition for review denied May 15, 1979, 286 Or 435

STATE OF OREGON, *Respondent,*

*v.*

JOHN EUGENE ALBERTSEN, *Appellant.*

(No. CC77-566, CA 10723)

590 P2d 235

Sally L. Avera, Dallas, argued the cause for appellant. With her on the brief was Avera and Avera, Dallas.

Allison Smith, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Defendant seeks reversal of his conviction for the felony of driving while suspended. ORS 487.560. Defendant contends there was insufficient "reasonable suspicion" to stop the car he had been operating. We disagree, and affirm.

An officer, while parked along a highway, observed a car pass being driven by a man (the defendant) with a woman passenger. The officer pulled his marked patrol car onto the highway heading in the same direction. Almost immediately the car, in the officer's words, "swerved over to the shoulder and stopped." The car had not appeared to the officer to be slowing down to stop before the officer pulled onto the highway. The officer passed the stopped car, traveled a mile or more down the highway, pulled off and parked. A few minutes later the same car passed the officer with the woman driving and the man riding as a passenger. The officer pulled back onto the highway and followed the car about a mile. The male passenger turned and looked at the officer several times. The officer, suspecting a "license-type violation," stopped the car. Investigation revealed that the defendant's driver's license had been suspended for driving under the influence of intoxicants. This prosecution followed.

Defendant relies upon ORS 131.615 and the constitutional doctrines of *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), for the proposition that the stop was unlawful. Under these rules, we have held that motor vehicles cannot be stopped merely to verify the driver's license. *State v. Johnson, Wesson,* 26 Or App 599, 554 P2d 194 (1976). The state contends that, in so holding, we erroneously relied on *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), as authority, because the court in *Cloman* stated "we are not passing upon the right to stop and examine the driver's operating license." 254 Or at 6, n 2. That may be. But we fail to see how the fact that the Supreme Court regards a question as unresolved establishes that we

were wrong in our own resolution in *Johnson, Wesson.* In the absence of further guidance from the Supreme Court, we adhere to *Johnson, Wesson. See also State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978); *State v. Brister,* 34 Or App 575, 579 P2d 863 (1978); *State v. Tucker,* 34 Or App 203, 578 P2d 803 (1978).

■ Thus, there must be probable cause to believe a license offense is being committed—which would justify a stop and immediate arrest or citation in lieu of arrest—or reasonable suspicion to believe a license offense is being committed—which would justify an investigative stop and further inquiry. There is no probable cause issue in this case; the question is the reasonableness of the officer's suspicion.

■ In assessing the reasonableness of suspicion, it is appropriate to consider what quantity and quality of information could conceivably be available to an officer. There is probably no violation of law, always committed in public, with as few possible outward manifestations as the crime of driving while suspended and related license offenses.

■ Measured against the yardstick of what facts can conceivably create suspicion, it is difficult to imagine a stronger case for suspecting a license offense was being committed. Upon seeing a marked police car pull onto the road behind him, defendant "swerved" off the road and stopped. Defendant and his passenger exchanged places. When the officer again followed the car defendant had been driving, defendant kept glancing backward. If a *Terry*-type stop is not justified on these facts, enforcement of statutes relating to driver's licenses will only be possible ancillary to investigation of other traffic infractions, accidents, and perhaps roadblocks or the like. We conclude the stop was reasonable.

Affirmed.

**THORNTON, J.,** concurring.

I concur. Additionally, I would adopt here and now the rationale of the cases cited in the margin,[1] and would declare that under the provisions of ORS 482.040(2)(b)[2] a police officer may stop a vehicle to check the identity of the driver, the driver's motor vehicle operator's license or the motor vehicle registration without the necessity of first establishing a reasonable suspicion before doing so that the driver had committed a crime. *See, State v. Johnson,* 10 Or App 353, 499 P2d 348, *rev den* (1972).

I agree with the view expressed in the cited cases that to hold otherwise would in effect prevent the proper enforcement of our traffic laws.

As the United States Supreme Court recently observed in *United States v. Martinez-Fuerte,* 428 US 543, 561, 96 S Ct 3074, 49 L Ed 2d 1116, 1130 (1976), another automobile stop case:

"* * * [O]ne's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence. * * *"

"* * * [T]his practice of stopping automobiles briefly for questioning has a long history evidencing its utility and is accepted by motorists as incident to highway use." 428 US at 561 n 14.

It follows necessarily from the above that I would overrule our decision in *State v. Johnson, Wesson,* 26

---

[1] *Lipton v. United States,* 348 F2d 591 (9th Cir 1965); *Palmore v. United States,* 290 A2d 573 (DC App 1972); *State v. Holmberg,* 194 Neb 337, 231 NW2d 672 (1975); *Leonard v. State,* 496 SW2d 576 (Tex Cr App 1973).

[2] ORS 482.040(2)(b) provides:

"The licensee shall have such license in his immediate possession at all times when driving a motor vehicle, and shall display it upon the demand of a justice of the peace, a peace officer, or a field deputy or inspector of the division. It is a defense to any charge under this subsection that the person so charged produce in court an operator's or chauffeur's license that had been issued to him and was valid at the time of his arrest."

Or App 599, 554 P2d 194 (1976), and any similar previous expressions by this court to the same effect.

**TANZER, J.,** dissenting.

I agree with all of the majority opinion except the last paragraph. I would hold that the observations of the officer are not sufficient to constitute reasonable suspicion.

As indicated in the majority opinion, the only objective facts upon which a reasonable suspicion might be based are that the defendant pulled his car over to the shoulder in the sight of the officer shortly after the officer began driving behind him, that defendant got out of his car and opened his trunk, that shortly thereafter a woman was driving the car with defendant in the passenger seat, and that the defendant turned his head and looked toward the officer several times.

Unlike the majority, I do not find that

"* * * it is difficult to imagine a stronger case for suspecting a license offense was being committed."

All that happened was that the defendant, in the sight of the officer, pulled over, changed drivers, and thereafter looked at the police car behind him. I can easily imagine several stronger cases and, unless we were to require no suspicious facts at all, I find it difficult to imagine a weaker case. The requirement of articulable objective facts justifying a reasonable suspicion has not been met. For that reason, I dissent.

I also disagree with the additional rationale of the concurring opinion. The first ground is that ORS 482.040(2)(b), which requires a licensee to possess a license when driving a motor vehicle and to display it upon demand, gives blanket authority for police officers to stop any motorist to check his operator's license without the necessity of reasonable suspicion. Most cases I have found, which so hold, including two of the cases relied upon in the concurring opinion, are based

upon an express provision in the analogous statute which authorizes the police to make such stops.[1] Conversely, in those states where the statute does not expressly authorize stops for inspection, most courts have refused to read authorization for stops into the statute.[2] I agree with the view that we should not read into a statute an authorization for the police to detain persons where the statute has no words to that effect. ORS 482.040(2)(b) requires a motorist to display his operator's license upon demand, but it does not authorize a police officer to stop a motorist for the purpose of making such a demand. Therefore, regardless of any constitutional problem, there is no statutory basis in Oregon for a stop without reasonable suspicion.

Furthermore, the decision of the United States Supreme Court in *United States v. Martinez-Fuerte,* 428 US 543, 96 S Ct 3074, 49 L Ed 2d 1116 (1976), relied on in the concurring opinion, gives no cause to overrule our decision in *State v. Johnson, Wesson,* 26 Or App 599, 554 P2d 194 (1976). That holding was expressly limited to "fixed checkpoint" stops, as at the border, 428 US at 559. This is not such a case.

Because I cannot agree that there was sufficient objective justification for a stop on reasonable suspicion and because I cannot agree that there is statutory

---

[1] *State v. Blackwelder,* 34 NC App 352, 238 SE2d 190 (1970); *State v. Holmberg,* 194 Neb 337, 231 NW2d 672 (1975); *State v. Benson,* 198 Neb 14, 251 NW2d 659 *cert den* 434 US 833 (1977); *Leonard v. State,* 496 SW2d 576 (Tex Cr App 1973), *Faulkner v. State,* 549 SW2d 1 (Tex Cr App 1976); *State v. Allen,* 282 NC 503, 194 SE2d 9 (1973).

[2] *United States v. Montgomery,* 561 F2d 875 (DC 1977); *People v. McPherson,* 550 P2d 311 (1976); *State v. Prouse,* 382 A2d 1359 (Del Supr 1978); *State v. Ruud,* 90 NM 647, 567 P2d 496 (1977); *People v. Mestey,* 402 NYS2d 577, 61 AD2d 777 (1978); *Commonwealth v. Swanger,* 453 Pa 107, 307 A2d 875 (1973); *People v. James,* 44 Ill App 3d 300, 3 Ill Dec 88, 358 NE2d 88 (1976); *State v. Bonds,* 59 Haw 130, 577 P2d 781 (1978); *State v. Ochoa,* 112 Az 582, 544 P2d 1097 (1976). *Contra, Kinard v. State,* 335 So 2d 916, *rev'd on other grds,* 335 So 2d 924, *on remand* 335 So 2d 927 (Ala Crim App 1976); *Palmore v. United States,* 290 A2d 573 (DC App 1972); *City of Overland Park v. Sandy,* 2 Kan App 2d 176, 576 P2d 1097 (1978); *Lipton v. United States,* 348 F2d 591 (9th Cir 1965).

authorization for a stop in the absence of reasonable suspicion, I conclude that the stop was unauthorized by law and that the motion to suppress the evidence which resulted from the stop should have been suppressed. Accordingly, I would reverse.