897 So.2d 520 (2005)
Timeka TUBBS, Appellant,
v.
The STATE of Florida, Appellee.
No. 04-1259.
District Court of Appeal of Florida, Third District.
March 2, 2005.
Bennett H. Brummer, Public Defender, and Susan Martin, Special Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Angel L. Fleming, Assistant Attorney General, for appellee.
Before GERSTEN and SUAREZ, JJ. and SCHWARTZ, Senior Judge.
SCHWARTZ, Senior Judge.
The defendant appeals from a conviction and sentence for trafficking in cocaine entered on a nolo plea which reserved the right to challenge the validity of the stop of the vehicle which contained the contraband. We affirm the denial of the motion to suppress the fruits of the stop[1] because, although for reasons not articulated by the police or in the court below, we find that it was constitutionally justified.
The basis of this conclusion lies in the testimony of a Monroe County detective named Ramirez who was driving an unmarked vehicle south on U.S. 1 into the Upper Florida Keys. His attention was drawn to a car proceeding ahead of him because its tag came back to a woman named Angela Beckford whom he knew had a suspended license and was involved in narcotics activity. At the time, the vehicle was being driven by a then-unidentified male, who turned out to be Taurus Hines, with a then-unidentified female passenger, who turned out to be the appellant-defendant Timeka Tubbs, as the passenger. Although Ramirez gave rather equivocal testimony that he saw the vehicle periodically exceed the 55 mile-per-hour speed limit, he did not stop the vehicle when the alleged speeding took place. The stop now in *521 question was effected only after the car stopped for a red traffic light in Key Largo. He then observed the driver point to a marked police vehicle on the side of the road whereupon the male and the female switched seats. During the exchange, the male seemed to attempt to hide from the policeman in the marked car. After these events, Ramirez radioed a request to stop the vehicle. Although he himself had not observed anything wrong with Ms. Tubbs' driving, the officer driving the marked vehicle soon complied and pulled her over. (The cocaine, which Ms. Tubbs unwisely enough volunteered belonged to her, was discovered in a pair of men's trousers found in the back seat of the car after a narcotics dog alerted to its presence.)
We hold the stop was permissible because the furtive movements of the driver and passenger, the apparent concern with the presence of a police officer, and the ensuing switch in drivers gave rise to an objectively founded suspicion that Hines had been knowingly and illegally driving the car with, for example, no or a suspended or revoked license. Because the facts known to the detective thus objectively provided a reasonable basis for suspecting wrongdoing, the stop was constitutionally permissible as a matter of law.
Several cases support this conclusion. Thus, in Rock v. State, 802 P.2d 998, 999 (Alaska Ct.App.1990), the court stated:
A suspicion that the driver's license is suspended or revoked... is sufficient to support a traffic stop. Smith v. State, 756 P.2d 913, 914-16 (Alaska App.1988).
Rock argues that a suspicious look and a change of drivers, when unaccompanied by any bad driving, are insufficient to justify a traffic stop. We agree with Rock that an officer's observation of a "suspicious look" from a passing driver is too subjective and ambiguous a factor to be given much weight in the reasonable suspicion determination. However, we believe that Rock's conduct in suddenly stopping his car and changing places and apparel with a passenger was sufficiently unusual to arouse a reasonable suspicion that the person originally driving had been doing so illegally. "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea." Sibron v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). In this case, Rock's furtive actions after he saw Heath are strongly indicative of a driving violation.
Heath observed Rock engaging in a legally regulated activity  driving a car. Driving is an activity that is legally open to some people  licensed drivers who are not under the influence of intoxicants  and closed to others. Viewed in this context, Rock's conduct in switching places with another person, in an apparent attempt to conceal the fact that he had been in the driver's seat, was suspicious. Actions that appear to be calculated to mislead a police officer as to which person was driving are immediately suggestive of illegal driving. Given the circumstances of this case, we find that the stop was adequately supported by a reasonable suspicion of imminent public danger.
Similarly, in State v. Albertsen, 37 Or.App. 679, 682-83, 590 P.2d 235, 236-37 (1978), the court stated:
Thus, there must be probable cause to believe a license offense is being committed which would justify a stop and immediate arrest or citation in lieu of arrest or reasonable suspicion to believe a license offense is being committed which would justify an investigative stop and further inquiry. There is no probable cause issue in this case; the question *522 is the reasonableness of the officer's suspicion.
In assessing the reasonableness of suspicion, it is appropriate to consider what quantity and quality of information could conceivably be available to an officer. There is probably no violation of law, always committed in public, with as few possible outward manifestations as the crime of driving while suspended and related license offenses.
Measured against the yardstick of what facts can conceivably create suspicion, it is difficult to imagine a stronger case for suspecting a license offense was being committed. Upon seeing a marked police car pull onto the road behind him, defendant "swerved" off the road and stopped. Defendant and his passenger exchanged places. When the officer again followed the car defendant had been driving, defendant kept glancing backward furtively. If a Terry-type stop is not justified on these facts, enforcement of statutes relating to driver's licenses will only be possible ancillary to investigation of other traffic infractions, accidents, and perhaps roadblocks or the like. We conclude the stop was reasonable.
Accord, Brown v. Commonwealth, 17 Va.App. 694, 440 S.E.2d 619 (1994); State v. Trammel, 270 Ga.App. 395, 606 S.E.2d 613 (2004); Horne v. State, 237 Ga.App. 844, 517 S.E.2d 74 (1999); see also Ndow v. State, 864 So.2d 1248 (Fla. 5th DCA 2004). But cf. State v. Nichols, No. 97CA00156, 1998 WL 400902 (Ohio Ct.App. May 18, 1998) (defendant's suspicious glance as he drove car by officer coupled with his switching seats with the passenger insufficient to create reasonable suspicion about status of defendant's license).
Of course the fact that Hines had indeed been (and was arrested for) driving with a suspended license does not matter to the analysis.[2] But so too is it irrelevant that this rationale for the stop was not pressed either by the police at the scene or in the lower court suppression proceeding,[3]Devenpeck v. Alford, ___ U.S. ___, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Holland v. State, 696 So.2d 757 (Fla.1997), nor relied upon by the trial court in denying the *523 motion. See Robertson v. State, 829 So.2d 901 (Fla.2002); Simmons v. State, 790 So.2d 1177 (Fla. 3d DCA 2001); Knox v. State, 689 So.2d 1224 (Fla. 5th DCA 1997). The right-for-the-wrong-reason doctrine applies in reviewing the validity both of police seizures, see Devenpeck, ___ U.S. at ___, 125 S.Ct. at 588, and of judgments and orders of lower courts. See Carraway v. Armour & Co., 156 So.2d 494 (Fla.1963)(applying what should now be known as the "drunken cabbie" doctrine). In this case, which involves both situations, the rule applies in spades.
Affirmed.
NOTES
[1] There is no appellate challenge to the search of the vehicle that followed the stop and resulted in the seizure of the cocaine.
[2] See R.A. v. State, 725 So.2d 1240, 1244 n. 1 (Fla. 3d DCA 1999)(Schwartz, C.J., dissenting), review denied, 741 So.2d 1137 (Fla.1999).
[3] We thus do not consider the correctness of the primary justification previously asserted for the stop, that there was sufficient evidence that Hines had committed a speeding violation. 14A Fla. Jur.2d Criminal Law § 829 (2001). Nor do we decide whether a traffice violation may ever be the basis for stopping a car while it was being driven by another person who had not committed the offense. Compare State v. Briggs, Nos. IN93-09-1594 to IN93-09-1599, 1994 WL 319143 at * 3(Del.Super.Ct. June 16, 1994)(suspicious factors that "driver was not of legal age to drive ... were no longer present" when officer stopped car; at that time, a woman was driving the car, underage driver was a passenger, and officer did not intend to issue a citation to suspected underage driver); People v. Gray, 305 Ill.App.3d 835, 239 Ill.Dec. 250, 713 N.E.2d 781 (1999)(although officer had right to issue a citation to any vehicle occupant, no traffic violation committed when officer observed driver stop car on roadway, partially block street, and switch places with passenger); Zimmerman v. Commonwealth, 234 Va. 609, 363 S.E.2d 708 (1988)(no reasonable basis for stop where passenger asked officer for directions to a military base location, passenger and driver switched seats, and vehicle drove a short distance, not turning in direction given by officer), with Larson v. State, 669 P.2d 1334 (Alaska Ct.App.1983)(reasonable suspicion that defendant's driving posed an imminent danger to public safety did not terminate when driver permitted stranger to drive his car; it was likely that defendant would resume driving).