Argued February 22, reversed and remanded May 30, reconsideration
denied June 28, petition for review denied December 19, 1978

# STATE OF OREGON, *Appellant,*
*v.*
# KELLY BRISTER, JR., *Respondent.*
## (No. F 50478 & F 50479, CA 9553)

579 P2d 863

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The state appeals a ruling on a pretrial motion which suppressed "all evidence which derived directly or indirectly from the actions of police officers in demanding the defendant's driver's license."

We take the material facts from the trial court's findings contained in the extensive memorandum opinion. Two police officers patrolling in a police vehicle observed defendant driving a vehicle which had no license plates. They observed no moving violations or equipment defects. The officers stopped the vehicle defendant was driving by use of blue flashing lights. One police officer testified the only reason for stopping the car was its lack of license plates. The trial court found, and defendant agrees, the police had probable cause to make the stop.

One officer approached defendant's car on the left side. He then noticed a temporary registration certificate affixed to the inside of the windshield. He examined it without talking to the defendant and determined to his satisfaction that the certificate was in order. He then told the defendant the reason he was stopped and explained the temporary registration certificate was all right. He then asked the defendant for his operator's license.

Defendant presented an Oregon operator's license which appeared current and valid on its face. The officer ran a "radio check" on the status of the license and learned the defendant was subject to two current license suspensions. Defendant was arrested, taken into custody and issued two citations; one for driving while his license was suspended, ORS 487.560, and the other for possessing and displaying a suspended operator's license, ORS 482.610.

The defendant argues, in support of the suppression order, that once the officers determined the vehicle was properly licensed any probable cause to stop the vehicle evaporated and the police were, therefore,

statutorily prohibited from detaining him and making additional inquiry. This argument is based on ORS 131.615:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"* * * * *

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

Based on this statute defendant contends the officers were entitled to make reasonable inquiry concerning the lack of vehicle license plates, but since he was not stopped on suspicion he was driving without a valid license any inquiry concerning his operator's license was unreasonable.

This statute is not applicable to stops for traffic infraction violations. In order to stop a person under this statute a police officer must have a reasonable suspicion the person has committed a *crime*.[1] Crime, as used in this statute, is a felony or a misdemeanor. ORS 131.605(1) and 161.515. The offense for which defendant was stopped in this case is a traffic infraction, not a crime.

The authority of a police officer to arrest for traffic violations is contained in ORS 484.350(4). In essence, he may arrest the motorist if he has probable cause to believe a traffic offense has been committed in his presence. *See* ORS 133.310(1) (a) and (b). Arrest in this context is simply the stopping of the motorist for the purpose of issuing a citation charging the observed violation. It does not encompass, necessarily, arrest in terms of taking into physical custody.

---

[1] The Supreme Court, in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), indicated in dicta a traffic stop could be made pursuant to ORS 131.605 to 131.615. The court was apparently referring only to stops for misdemeanor offenses.

In his motion to suppress the evidence defendant contended the inquiry violated his constitutional rights as well as his rights under ORS 131.605 to 131.615. The court concluded the inquiry was prohibited by the statute. Since we conclude the stop and frisk statute is inapplicable, it remains to determine if the motion can be sustained on constitutional grounds, specifically the Fourth Amendment to the United States Constitution and its counterpart in the Oregon Constitution.

The touchstone of analysis in a Fourth Amendment question is the reasonableness, under all the circumstances, of the governmental intrusion on the citizen's personal liberty. It is proper, in this analysis, to balance the extent of the intrusion against the needs of the government to enforce its laws. *See Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *Commonwealth of Pennsylvania v. Mimms,* 434 US 106, 98 S Ct 330, 54 L Ed 2d 331 (1977).

Every motorist who drives a vehicle in Oregon must have in his immediate possession a valid operator's license and show it upon demand to any peace officer. ORS 482.040(2) (b). The adjunct of the requirement is that a peace officer has a right to make such a demand after a lawful stop. The incremental intrusion on the freedom of an individual, necessary to inspect his license, is minimal.[2] Since he must carry a license and show it upon demand, a motorist has a limited expectation of privacy respecting his operator's license.

Balanced against the de minimis intrusion on personal liberty is the compelling interest of the state in traffic safety, including the requirement that only properly licensed individuals use the highways.

---

[2] Since the defendant was stopped based on probable cause to believe he was violating the law we are not involved with the question of whether police officers may make random license checks of motorists. *See United States v. Jenkins,* 528 F2d 713 (10th Cir 1975); *United States v. Lepinski,* 460 F2d 234 (10th Cir 1972); *People v. McPherson,* — Colo —, 550 P2d 311 (1976); *Palmore v. United States,* 290 A2d 573 (DC App 1972); *State v. Ruud,* 90 NM 647, 567 P2d 496 (1977).

Moreover, noncompliance with licensing requirements is not effectively detectable without asking the motorist for his license. It is practically impossible to determine if a motorist has a valid license on his person by simply observing him drive a vehicle. Additionally, even though an operator's license appears valid on its face, its ultimate validity can only be determined by checking with the appropriate agency to see if it is revoked, suspended or otherwise restricted.

■ Police officers come into contact with motorists in myriad of situations including stops for traffic violations and accident investigations. Considering the needs of law enforcement, the limited expectation of privacy respecting operator's licenses and the minimal intrusion on privacy, the inquiry in the case did not offend federal or state constitutional principles. It was error to grant the motion to suppress.

Reversed and remanded.