Argued and submitted October 5, 1983, reversed and remanded February 15, 1984

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DEAN FRANKLIN PAINTER,
*Petitioner on Review.*

(CA A25981; SC 29789)

676 P2d 309

Michael B. Mendelson, Portland, argued the cause and filed the brief for petitioner on review.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

ROBERTS, J.

## ROBERTS, J.

The issues in this case concern the point at which a police-citizen encounter becomes a "stop" within the statutory definitions and the sources of authority to make the stop.

The suppression motion was argued below on the theory that the officer had no justification for the stop. Defendant asserted that the officer had insufficient facts to form a reasonable suspicion of defendant's involvement in some crime. The state argued that reasonable suspicion in fact existed. The state's argument assumed, of course, that a stop occurred at the time of the initial encounter. The trial court found reasonable suspicion to support the stop and upheld it as "valid," "reasonable," and authorized by the stop and frisk statute. ORS 131.615 and 131.625.

The Court of Appeals affirmed but on the theory advanced in the state's response brief that defendant was not "seized" until he was detained by force during the frisk. The court then found the seizure authorized by both the stop and frisk statute, ORS 131.615, and the traffic infraction citation statute, ORS 484.353. Defendant challenges both the Court of Appeals's definition of the seizure and the statutory bases for the officer's authority. We reverse.

■　　The sequence of events in this encounter was as follows: A deputy sheriff was on vehicle patrol looking for, according to his testimony, "suspicious people." He saw defendant walking in an alley at 3 a.m. and asked him what he was doing. Defendant responded that he had car trouble and was looking for a phone. The officer requested identification. Defendant produced an expired Virginia driver's license and several credit cards. The officer retained defendant's license and credit cards. He frisked defendant, and ran a radio check on defendant which came back clear. Still retaining the license, he asked defendant the make and location of his car. Defendant told him. The officer returned the documents and then left. From the information defendant gave him, the officer located the car, conducted a flashlight examination of the interior through the windows and saw what the officer suspected was a pistol under the driver's side front seat of the car. He waited until defendant returned to the vehicle and drove away, and then stopped him for driving while suspended

and for carrying a concealed weapon. Defendant claims he was unlawfully seized and seeks to suppress the evidence obtained as a result of this encounter. If the seizure is unlawful, all evidence, including statements derived therefrom, must be suppressed. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *Brown v. Illinois,* 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975).

■ ■   We disagree with the Court of Appeals that defendant was not "seized" until the officer restrained him by physical force during the frisk. Whether or not physical force is used, a show of authority may suffice to convert a police-citizen encounter into a "stop" of statutory proportion. *State v. Warner,* 284 Or 147, 162, 585 P2d 681 (1978). In addition, the stop and frisk statute contemplates that a stop will precede a frisk,[1] and indicates that a stop and a frisk are distinct police investigatory measures serving different purposes and requiring separate justifications.[2]

Prior to the frisk, the officer retained defendant's license and credit cards. Defendant was, in fact, unable to leave. It was during this time that defendant made statements which led the police to his car and ultimately to seizure of evidence. In *Warner* we stated that the "[s]eizure of a person includes arrest, investigatory detention, and any other detention of a person against his will." 284 Or at 161. We found a "stop" for purposes of the stop and frisk statute on similar facts in that case.[3]

---

[1] ORS 131.625(1) authorizes the police to "frisk a *stopped* person for dangerous or deadly weapons * * *." (Emphasis added.)

[2] A stop is permissible if the officer "reasonably suspects that a person has committed a crime." ORS 131.615(1). A frisk is authorized "if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present." ORS 131.625(1).

[3] In *State v. Warner,* 284 Or 147, 585 P2d 681 (1978), we examined the point at which a police encounter with two people became a restraint under the stop and frisk statute.

The sequence of events in *Warner* was as follows: two police officers stopped two men leaving a bar (the state conceded there was no reasonable suspicion of the commission of a crime) and requested them to return to the bar, remove their wallets, take out their identification, and place it on the table in front of them; the men were told the police were investigating an armed robbery. One officer asked the men to accompany him to his police car to run a check on the identification. Five to ten minutes later other officers arrived. Sometime during this period the identification checks came back clear. One officer asked the men to empty their pockets on the hood

426

■ We note that federal Fourth Amendment jurisprudence places some constraints on our interpretation of when a stop occurs under our statutes. If we were to decide that defendant was seized at some time later than the point at which the federal court would find a seizure, we would place the state in jeopardy of violating the Fourteenth Amendment.

In *Florida v. Royer,* 460 US 491, 103 S Ct 1319, 75 L Ed 2d 229 (1983), the court found a "seizure" for purposes of federal constitutional analysis

"* * * when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, * * *." 460 US at 501, 75 LEd 2d at 239. *See also* 460 US at 508, 75 L Ed 2d at 243 (Powell, J., concurring).

*United States v. Mendenhall,* 446 US 544, 100 S Ct 1870, 64 L Ed 2d 497 (1980) (plurality), the case relied upon by the Court of Appeals, was distinguished in *Royer* because the officers detaining Royer retained his documents during the encounter. *Royer* explained:

"The case before us differs [from *Mendenhall*] in important respects. Here, Royer's ticket and identification remained in the possession of the officers throughout the encounter; the officers also seized and had possession of his luggage. As a practical matter, Royer could not leave the airport without them. In Mendenhall, no luggage was involved, the ticket and identification were immediately returned, and the officers were careful to advise that the suspect could decline to be searched. Here, the officers had seized Royer's luggage and made no effort to advise him that he need not consent to the search." 460 US at 504, 75 L Ed 2d at 241, n. 9.

■ In this case, having found that defendant was stopped, we examine whether the stop was authorized. We hold that it was not.

---

of the car. One man pulled from his pocket a large amount of money and several bullets. The police drew their guns and told them to freeze. The police frisked the men.

The state argued that no seizure occurred until the men were told to freeze. The court held that the seizure occurred "when Officer Myers 'asked' the defendant to put his ID on a table near the door of the Homestead Tavern * * *." 284 Or at 165.

The Court of Appeals determined that defendant's explanation of his presence on the street, vehicle malfunction, and his display of an expired driver's license provided the officer with reasonable suspicion to conclude that defendant had committed the Class B traffic infraction of driving with an expired license. The court found that with this information, both ORS 131.615 and ORS 484.353(2)(b) authorized defendant's detention. We cannot accept that conclusion.

■■■  The stop and frisk statute confers authority temporarily to restrain citizens when suspicion exists that an individual has committed a crime. ORS 131.615(1).[4] Traffic infractions are not among the category of offenses to which the stop and frisk statute applies. ORS 131.605(5), 161.515.[5] We observed in the context of a different stop that "[o]urs is not a society where police can stop any citizen and require the production of an 'identification card' without reason." *State v. Tourtillott,* 289 Or 845, 868, 618 P2d 423 (1980). We would add that the reason for the stop must square with the requirements of the statute. The reason given in this case, commission of a traffic infraction, falls short of the statutory requirement.

Similarly, ORS 484.353 confers no authority to stop and detain in this situation. That statute provides:

"(1)  A police officer may issue a citation to a person for a traffic infraction at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act when the traffic infraction is committed in the police officer's presence.

"(2)  A police officer:

"(a)  Shall not arrest a person for a traffic infraction.

---

[4] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

[5] ORS 131.605(1) provides:

" 'Crime' has the meaning provided for that term in ORS 161.515."

ORS 161.515 provides:

"(1) A crime is an offense for which a sentence of imprisonment is authorized.

"(2) A crime is either a felony or a misdemeanor."

"(b)   May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation.

·  "(c)   May make an arrest of a person as authorized by ORS 133.310(2) if the person is stopped and detained pursuant to the authority of this section.

"(3)   When a police officer at the scene of a traffic accident has reasonable grounds, based upon the police officer's personal investigation, to believe that a driver of a vehicle involved in the accident has committed a traffic offense in connection with the accident, the police officer may issue to the driver a citation for that offense. The authority under this subsection is in addition to any other authority to issue a citation for a traffic offense."

The first paragraph authorizes a police officer to cite for a traffic infraction "committed in the officer's presence." Paragraph (2) prohibits an arrest and permits a stop and detention to conduct an investigation related to "the traffic infraction, identification and issuance of citation." Paragraph (3) applies to traffic offenses committed outside the officer's presence and restricts the officer's authority to issue a citation in this instance to the traffic accident context. As an additional limitation, paragraph 3 requires that the officer must have personally gathered evidence to conclude that the person to be cited committed the offense.

█   It is apparent that the traffic infraction to which paragraph (2) refers is one "committed in the officer's presence" for which the officer would have the authority to issue a citation, but for which he or she would be prohibited from arresting. No logic supports an interpretation that would authorize the officer to detain a person to investigate a traffic infraction for which he or she could not issue a citation.

██   Our interpretation corresponds with the language of ORS 153.110(3) which provides:

"(3)   Any person authorized to issue citations pursuant to this section may not arrest for violation of the infraction but may detain any individual reasonably believed to have committed a violation * * * only so lcng as is necessary to determine, for the purposes of issuing a citation, the identity of the violator and such additional information as is appropriate for law enforcement agencies in the state."

Only those officials who have observed an infraction or who are on the scene of an accident and have personally investigated the cause of the accident are "authorized to issue citations," and, hence, authorized to detain. The purpose of the detention is to gain information necessary to issue the citation. Where no citation can be issued detention is not authorized.

The evidence gained from this unauthorized stop is suppressed. The decision of the Court of Appeals is reversed. This case is remanded to the trial court.