Argued and submitted February 17, petition for review of order of the board dismissed, order of the director affirmed September 5, reconsideration denied October 19, 1984, petition for review denied January 15, 1985 (298 Or 553)

The STEAMBOATERS,
*Petitioner,*

*v.*

WINCHESTER WATER CONTROL DISTRICT et al,
*Respondents.*

(60952; CA A28451 (Control))

The STEAMBOATERS et al,
*Petitioners,*

*v.*

WINCHESTER WATER CONTROL DISTRICT et al,
*Respondents.*

(47469; CA A28680)

688 P2d 92

Allen L. Johnson, Eugene, argued the cause for petitioners. With him on the brief was Bill Kloos, Eugene.

Jacob Tanzer, Portland, argued the cause for respondent Winchester Water Control District. With him on the brief was Ball, Janik & Novack, Portland.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael D. Reynolds, Assistant Attorney General, Salem, filed the brief for respondents Oregon Water Resources Department and James Sexson, Oregon Water Resources Director.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner Steamboaters is an organization of over 400 individuals headquartered in Steamboat, near the headwaters of the North Umpqua River. Its primary purpose is to preserve and enhance the fishery resource and the clean angling waters of the river. It seeks judicial review of both an order of the Water Policy Review Board (WPRB) approving respondent's application for a permit to appropriate water for a hydroelectric project on the North Umpqua and a water appropriation permit issued by the Water Resources Director (WRD) in connection therewith. We dismiss the petition for review of WPRB's decision and affirm the decision of WRD.

In 1980, respondent Winchester Water Control District (District) applied for a permit to construct a hydroelectric project on the North Umpqua. To construct the project, District entered into a contract with Elektra Power Corporation (Elektra), providing that Elektra would finance and construct the project in return for an 18 year lease of the completed hydroelectric facility and 90 percent of the income received from the sale of power to Pacific Power & Light.

Pursuant to ORS 537.170, District's application was referred to WPRB. Subsequently, WPRB held a contested case hearing on the application; Steamboaters was granted party status in that proceeding. Following testimony, WPRB issued an order approving the application. The application was then referred to WRD, who issued a water appropriation permit to District.

As noted, Steamboaters seeks judicial review of both the order of WPRB approving District's application and the permit to appropriate issued by WRD. District[1] moved to dismiss the petitions, contending that this court lacks jurisdiction. It is District's position that WPRB's order approving the application for the permit is not reviewable by this court, either because (1) ORS 536.560 provides that appeals of WPRB orders are to the circuit court or (2) the order is not a final order under the Administrative Procedures Act (APA). District also contends that the issuance of the permit by WRD is not reviewable here because it is an order in other than a

---

[1] Respondent Water Resources Department opposes District's motion to dismiss but adopts the brief of District on the merits.

contested case. ORS 183.484(1). Steamboaters, on the other hand, maintains that both decisions are final orders in the same contested case. Resolution of this issue requires examination of the statutory framework under which permits to appropriate water for hydroelectric projects are issued.

Under ORS 537.130, application for a permit to appropriate water is made to WRD. If, as in the present case, the proposal is to develop hydroelectric power in excess of 100 theoretical horsepower, WRD must refer the matter to WPRB for a hearing to determine whether the use would impair or be detrimental to the public interest. ORS 537.176(1). If WPRB determines that the use is acceptable, it enters an order approving the application. After entry of the order, the application is referred to WRD for further proceedings not inconsistent with WPRB's order. ORS 537.170(4). If the use is determined to be unacceptable, WPRB enters an order rejecting the application or requiring its modification.

We turn first to District's contention that WPRB's order is appealable to the circuit court rather than to the Court of Appeals. In support of this contention, District relies on ORS 536.560:

> "Any person, public corporation or state agency aggrieved by any order, rule or regulation of the Water Policy Review Board under chapter 707, Oregon Laws 1955, may appeal from the same to the circuit court of the county in which the property affected by such order, rule or regulation or any part of such property is situated."

This statute, however, conflicts with ORS 537.185:

> "Judicial review of orders under ORS 537.150 to 537.190 shall be as provided in ORS 183.310 to 183.550 [the Administrative Procedures Act]."

When, in the same statutory scheme, there is both a specific provision and a general one, the latter of which includes matter embraced in the former, and the two cannot be harmonized, the particular provision controls over the general. *State v. Pearson,* 250 Or 54, 440 P2d 229 (1968); *League of Women Voters v. Lane Co. Bndry Comm.,* 32 Or App 53, 573 P2d 1255 (1977), *rev den* 283 Or 503 (1978). That rule is applicable here. ORS 537.185 specifically provides that orders issued by WPRB pursuant to ORS 537.170—the kind

of order under review here—are subject to the appeal provisions of the APA. That section cannot be harmonized with the more general provision of ORS 536.560 which places appellate jurisdiction in the circuit court. We hold that ORS 537.185, the more specific provision, controls appeals of orders issued under ORS 537.170.[2]

Having decided that the APA applies, we turn to District's contention that we lack jurisdiction over WPRB's order because it is not a "final order" as defined in that act. Under the APA, only final orders are appealable. ORS 183.480(1). A "final order" is defined as

"Final agency action expressed in writing. Final order does not include any tentative or preliminary declaration or statement that

"(A)  Precedes final agency action; or

"(B)  Does not preclude further agency consideration of the subject matter of the statement or declaration." ORS 183.310(5)(b).

District argues that, because WPRB's order precedes final agency action, i.e., the issuance of the permit by WRD, it is not a final order but, rather, an intermediate order. Steamboaters, on the other hand, maintains that both WPRB's order and WRD's permit are separate final orders made by two different state agencies.

We find District's position to be the more persuasive. The legislative history indicates that, when the legislature created WPRB and WRD, it intended to create a single agency, the Water Resources Department, to unify management of the state's water resources. See also ORS 536.008. To find now that those entities are separate agencies for purposes of judicial review would frustrate that legislative purpose. We conclude that WPRB's order is an intermediate order in a contested case and, therefore, not directly reviewable by this court. The petition in case A28451 is dismissed.

---

[2] As we noted previously in *Rogue Flyfishers v. Water Policy Review Bd.,* 62 Or App 412, 414 n 1, 660 P2d 1089 (1983), the conflict between ORS 536.560 and the APA creates considerable confusion for those attempting to determine where appellate jurisdiction of WPRB rules and orders lies. Although in this case we have determined that orders issued by WPRB pursuant to ORS 537.170 are subject to the provisions of the APA rather than to ORS 536.560, the question still remains as to which court has jurisdiction over other WPRB rules and orders.

The last jurisdictional issue we must decide in this case is whether we have jurisdiction to review WRD's issuance of the appropriation permit. District argues that the issuance of the permit is an order in other than a contested case and, thus, must be appealed to the circuit court. ORS 183.484. We disagree. WPRB, pursuant to OAR 690-75-000 to 690-75-045, held a contested case hearing to determine whether District's application should be approved. It issued an intermediate order approving the permit and referred it to WRD, who issued an appropriation permit consistent with WPRB's order. WRD's action was the final order in the contested case, *i.e.,* it was the final action of the Water Resources Department. As such, it is reviewable by this court. ORS 183.482. WPRB's intermediate order, which was incorporated by reference into WRD's permit, is reviewable as part of our review of WRD's final order.[3]

Having concluded that we have jurisdiction, we turn to the case on the merits. As its first assignment of error, Steamboaters contends that WPRB should not have processed District's application because District's joint venture arrangement with Elektra exceeded its statutory authority and because District did not comply with ORS 553.310, which requires formation of a subdistrict. We do not decide whether either of these contentions has merit, however, because we conclude that such issues are outside the purview of WPRB. WPRB's purpose is to formulate and apply a comprehensive water resource policy, not to supervise a water district's organizational and fiscal arrangements. In fact, ORS 536.320(1) expressly prohibits WPRB from overseeing a district's internal affairs:

"The Board shall not have power

"(1) To interfere with, supervise or control the internal affairs of any * * * public corporation."

---

[3] Had it not been incorporated by reference, we still would regard WPRB's intermediate order as reviewable by us as part of WRD's final order under ORS 183.482(7) and (8). Our review authority under those sections parallels that provided in ORS 19.140, which reads in part:

"Upon an appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from. * * *"

If District is acting outside the scope of its statutory authority by its financing and construction arrangements, Steamboaters' remedies, if any, including declaratory or injunctive relief, will have to be found in a forum other than WPRB.

■ The above analysis is equally applicable to Steamboaters' second assignment of error, in which it argues that WPRB should have considered whether District violated the Public Contract Law contained in ORS ch 279. The issue of compliance with chapter 279 is outside WPRB's jurisdiction. The legislature has enacted a statutory scheme for enforcement of the Public Contract Law. *See* ORS 279.045. WPRB is not part of that scheme; it properly refused to consider the issue.

■ Steamboaters next contends that WPRB and WRD erred by processing and approving District's application as an application by a municipal corporation. Under the statutory scheme, municipal corporations are exempt from the licensing provisions contained in ORS 543.010 to 543.620 and need only comply with the requirements of ORS ch 537. *See* ORS 543.150 and 543.650. Steamboaters maintains that, in view of District's contract with Elektra, District's application is actually a private application and therefore does not qualify for the municipal exemption. We do not agree. Although District has delegated much of the responsibility for the project to Elektra, it has retained sufficient control over the project and will receive sufficient benefit from it to qualify it for the municipal exemption. Under District's contractual agreement with Elektra, District retains ownership of the existing dam, structures and land. After 18 years, District will receive full ownership and control of the entire project. Under the contract, District has the right to terminate the lease if Elektra fails to perform any of the terms and conditions of the agreement. If the project is terminated, possession of the premises and all improvements will revert to District and Elektra will be obligated to restore the facilities to their initial standard of performance. Given this high degree of control over the project and the benefits which District will receive, we conclude the WPRB and WRD correctly processed the application as that of a municipal corporation.

■ Steamboaters' next three assignments of error pertain to the adoption of rules by WPRB. First, it contends that

WPRB acted unlawfully because it did not adopt rules before issuing its order in this case. WPRB in fact denied Steamboaters' request for formal rulemaking. Relying on our decision in *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973), Steamboaters argues that the standard embodied in the phrase "impair or be detrimental to the public interest" in ORS 537.170(1) is not sufficiently specific and that WPRB is therefore required to adopt rules establishing more definite standards before deciding whether to approve a hydroelectric application. In *Sun Ray* we held:

> "A legislative delegation of power in broad statutory language such as the phrase 'demanded by public interest or convenience' places upon the administrative agency a responsibility to establish standards by which that law is to be applied." 16 Or App at 70.

*See also Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980).

If the rubric of ORS 537.170(1) stood alone, we might agree with Steamboaters. However, because the phrase used in ORS 537.170(1) does not stand alone, we hold that the rule in *Sun Ray* is not applicable here. In ORS 537.170(3), the legislature has enumerated the standards to be used by WPRB to determine whether a proposed use would impair or be detrimental to the public interest. That section provides:

> "(3)  In determining whether the proposed use would impair or be detrimental to the public interest, the Water Policy Review Board shall have due regard for:

> "(a)  Conserving the highest use of the water for all purposes, including irrigation, domestic use, municipal water supply, power development, public recreation, protection of commercial and game fishing and wildlife, fire protection, mining, industrial purposes, navigation, scenic attraction or any other beneficial use to which the water may be applied for which it may have a special value to the public.

> "(b)  The maximum economic development of the waters involved.

> "(c)  The control of the waters of this state for all beneficial purposes, including drainage, sanitation and flood control.

> "(d)  The amount of waters available for appropriation for beneficial use.

. "(e)   The prevention of wasteful, uneconomic, impracticable or unreasonable use of the waters involved.

"(f)   All vested and inchoate rights to the waters of this state or to the use thereof, and the means necessary to protect such rights.

"(g)   The state water resources policy formulated under ORS 536.300 to 536.350 and 537.505 to 537.525."

Paragraph (g) incorporates ORS 536.310, which sets forth 12 additional criteria that WPRB must consider when determining whether a proposed use is acceptable. Thus, the legislature did not leave the term "public interest" unexplained. It clearly specified the interests which were not to be impaired. In fact, ORS 537.170(3) is far more specific than the rules that OLCC adopted in response to our opinion in *Sun Ray* and which were subsequently approved by this court. *See Sun Ray Dairy v. OLCC,* 20 Or App 91, 530 P2d 887 (1975). WPRB, therefore, did not err by applying the statutes to contested case proceedings without adopting administrative rules.

■       Steamboaters also contends that WPRB, by adopting temporary rules in another case—the Galesville Dam proceeding—but not in the present case has violated both the Equal Protection Clause of the United States Constitution and the Equal Privileges and Immunities Clause of the Oregon Constitution. Neither constitution requires WPRB to adopt such rules. The fact that the agency proceeded with more rigor in another case does not create an equal protection/equal privilege problem. It is enough that the agency proceeded with sufficient rigor here.

■       As its final assignment of error, Steamboaters argues that WPRB erred in making the following findings of fact:

"(22)   Winchester Water Control District plans to replace the existing timber dam.

"(23)   Plans for reconstruction of the dam are independent of the powerhouse construction and operation."

We review challenged findings of fact to determine whether they are supported by substantial evidence. ORS 183.482(8)(c). Examination of the record convinces us that these are. Dixon Collins, President of Elektra, testified:

"[COUNSEL]: If I may, sir, just a couple of points for clarification. In my review of our previous documents or of the

documents you submitted as part of the application, I understand that agreements now provide for the replacement of the dam which is the responsibility of Winchester Water Control District, is that right? And the responsibility or the obligation for the construction and operation of the fish ladder, the powerhouse and all the attendant facilities, is the part that Elektra is arranging the financing for and supervising construction of operation?

"[COLLINS]: That is correct.

"[COUNSEL]: The funding for these two aspects will be coming from different sources, is that correct?

"[COLLINS]: Yes, we will have absolutely nothing to do with funding for the dam. That's the responsibility of the owners of the facility which is Winchester. The funding for the rebuilding and enhancement, enlargening of the fish facility, building the turbine and all that, we are responsible for and have agreed to do. We would have nothing to do with the dam at all. Other than the one aspect where we agreed to provide the engineered plans which we have already done and submitted to your office.

"[COUNSEL]: But then conceivably the tie-in work would be done consistent with your planned operations as well, I assume.

"[COLLINS]: Well, the actually the way the dam is built, it just sort of ties right in, it's really, neither one's affected by the other. The dam just butts up against the facility and it ties in. Whether it's done or not done, or when it's done doesn't make any difference. Neither facility would be built any differently. They're totally independent of one another."

This testimony supports WPRB's findings. The final order of WRD is affirmed.

The petition in case A28451 is dismissed; case A28680 is affirmed.