Argued and submitted April 30, 1984, affirmed in part, reversed in part, and remanded
January 23, 1985

# WALKER,
*Appellant,*

*v.*

# CITY OF PORTLAND,
*Respondent.*

## (A8202-00922; CA A27846)

693 P2d 1349

Laurel S. Terry, Portland, argued the cause for appellant. With her on the briefs was Stoel, Rives, Boley, Fraser and Wyse, Portland.

Rhona Wolfe Friedman, Deputy City Attorney, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff brought this action for damages, alleging, in separate counts, false imprisonment and outrageous conduct arising out of his detention by defendant's police officers in connection with their investigation of an alleged burglary and assault. The trial court granted defendant's motion for summary judgment on both counts, and plaintiff appeals from the resulting judgment. We reverse only as to the false imprisonment count and remand for further proceedings.

The sole issue on the false imprisonment count is whether there are genuine issues of material fact precluding the granting of defendant's motion for summary judgment. ORCP 47; *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). We view the record in the light most favorable to the party opposing the motion, *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980), and draw all reasonable inferences from the affidavits and depositions against the moving party. *Uihlein v. Albertson's, Inc.,* 282 Or 631, 634, 580 P2d 1014 (1978); *Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978). The facts recited here are derived primarily from plaintiff's affidavit in opposition to defendant's motion for summary judgment.

On June 29, 1981, at approximately 9:25 a.m., two of defendant's police officers received a radio call requesting assistance in locating a suspect in an alleged burglary and assault, reported a few minutes earlier. The suspect was described as a black male of average build, wearing a blue and white striped shirt and tan slacks. As they patrolled the area they spotted plaintiff, who closely met the description of the suspect.[1] Around 9:30 a.m., as plaintiff was leaving the home of a friend, he was approached by the two armed and uniformed officers. He stated that the officers were "extremely threatening" and looked as if they were about to draw their guns. He told the officers his name and responded to questions regarding the ownership of the residence from which he had departed; however, he refused to give them his address, because he had been advised previously by an attorney that, in the event of police questioning, he should provide only his

---

[1] Plaintiff is a black male, 5 feet 9 inches tall, weighs approximately 160 pounds and was wearing tan colored slacks and a blue and white v-neck shirt.

name. The police subsequently threw plaintiff against the car, frisked him, kicked him and slammed the car door on his leg. Although plaintiff admitted that he did not enter the police car voluntarily, he also stated that he did not resist the officers' pushing.

Once plaintiff was in the car, the officers continued their questioning, but he refused to provide information other than his name. In response to plaintiff's questioning, the officers stated that defendant was under arrest, but they would not advise him of the charges against him or state the reason for his detention. Plaintiff gave the officers his attorney's name and asked them to use their radio to call the attorney or to let him go to a telephone; they refused both requests. Plaintiff was driven to another location, where an individual approached the police car, peered in and stated, "No, that's not the person." Plaintiff was then left alone in the police car while the officers walked around the neighborhood. Approximately 25 to 30 minutes later, they returned to the car and drove plaintiff to another location, where there were three police cars and approximately seven police officers. There, another individual confirmed that plaintiff was not the suspect.

Plaintiff was then taken from the police car and brought before another officer, Sergeant Johnson. His renewed requests to be advised of the charges against him and to contact his attorney were denied. At that time, plaintiff overheard Johnson ask the officers who had picked him up whether he was the man for whom they were looking. One of the officers responded that he was not, but told Johnson to keep plaintiff until they got the information they wanted from him. After hearing that, plaintiff asked again to speak to his attorney.

Subsequently plaintiff was transferred to another police car and driven to a new location. There, he was approached by an individual, who he later learned was the victim of the crime under investigation. She informed the police that plaintiff was not the suspect. After that identification, plaintiff was held involuntarily in the car for approximately five more minutes while the police ran a records check by phone. When he finally was released, he attempted to learn what was happening by talking to the victim, but was ordered

by the police to "get out." The police did not apologize to plaintiff and refused to return him to the area from which he had been picked up, because, they said, they did not have the time. The entire incident lasted approximately 40 minutes.

■     In his first assignment, plaintiff contends that, on those facts, the trial court erred in granting defendant's motion for summary judgment on his false imprisonment claim. False imprisonment is the imposition of unlawful restraint on another's freedom of movement. *Lukas v. J.C. Penney Co.,* 233 Or 345, 353, 378 P2d 717 (1963); *Christ v. McDonald,* 152 Or 494, 500, 52 P2d 655 (1936). The restraint need not be for more than a brief time. *Lukas v. J.C. Penney Co., supra.* The confinement required to establish a cause of action for false imprisonment may be accomplished by actual or apparent physical barriers, compulsive physical force, a threat to apply physical force or assertion of legal authority, *Gaffney v. Payless Drug Stores,* 261 Or 148, 150, 492 P2d 474 (1972); *Roberts v. Coleman et al,* 228 Or 286, 293, 365 P2d 79 (1961), so long as the plaintiff is aware of the confinement. *Roberts v. Coleman et al, supra.*

Although defendant concedes that plaintiff was confined against his will, and was aware of his confinement, it contends that the restraint was authorized by ORS 131.615 and, therefore, was not unlawful.[2] ORS 131.615 provides:

"(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2)   The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3)   The inquiry shall be considered reasonable only if

---

[2] Although the case has been argued as if the "stop" statute is the controlling law, defendant alleged by way of affirmative defense and argues that, if plaintiff's detention were deemed to be an arrest, the officers had probable cause to arrest. However, defendant does not contend that the question of whether plaintiff was detained unlawfully after the reason for his detention had dissipated would be different if he had been arrested rather than "stopped" under the statute. Accordingly, we do not consider that question. Neither does plaintiff argue that he was in custody within the meaning of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), or that, having asserted his desire to talk to his attorney, *all* questioning should have ceased. *See Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981). We do not, therefore, consider what effect, if any, those factors would have on the result here.

limited to the immediate circumstances that aroused the officer's suspicion."

■■ Plaintiff acknowledges that the initial stop and inquiry were lawful, but contends that at some point in time the officers exhausted their authority to detain him. We agree. As we stated in *State v. Carter/Dawson,* 34 Or App 21, 31, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979):

> "Detention and inquiry beyond the time, place and subject-matter limits codified in ORS 131.615—all components of what we call 'intrusiveness'—constitute an invalid 'random intervention into the liberty and privacy of a person.'" Quoting *State v. Evans,* 16 Or App 189, 197, 517 P2d 1225, *rev den* (1974).

The officers' initial detention of plaintiff was based on a reasonable suspicion that he was the suspect sought for a burglary and an assault; however, once they had determined that he was not that individual, the immediate circumstances that aroused their suspicion dissipated, and any further detention and inquiry was unreasonable. Because plaintiff could not have been lawfully detained solely for the purposes of running a records check on him, it would be incongruous to say that he could be detained for that purpose after any reasonable suspicion regarding his involvement in the crime had dissipated. Plaintiff's version of the facts, if believed, establish that at least as early as the time when he was cleared of suspicion by the victim of the crime (the third person to clear him), he was unlawfully detained.[3] Concededly, if defendant's version of the facts is believed, plaintiff was not unreasonably detained after he was cleared of suspicion. Therein lies the genuine issue of material fact, and the trial court erred in granting defendant's motion for summary judgment on plaintiff's false imprisonment claim.

■ Plaintiff also contends that the trial court erred in granting defendant's motion on his claim of outrageous conduct. Defendant, however, submits that we may not consider that contention, because plaintiff abandoned that count in the trial court. The record reveals that when counsel appeared at

---

[3] The detention arguably became unlawful *before* the victim saw defendant, because at least one of the officers told Sergeant Johnson that plaintiff was not the suspect, but that he should be held until he provided the information they wanted from him.

the hearing on defendant's motion, plaintiff's original counsel[4] advised the court that he had not had time to submit an affidavit or memorandum in opposition to defendant's motion, affidavit and memorandum. The court asked him if he had grounds to request a continuance; he indicated that that was not what he was requesting. Counsel then requested permission to supplement the record after the argument, which request the court took under advisement.

The oral argument that followed related to the false imprisonment count. At the conclusion of the argument, the court ruled that it would grant defendant's motion with the reservation that plaintiff might be able to persuade it to the contrary by supplementing the record. The following colloquy between the court and plaintiff's attorney then took place:

> "THE COURT: I must say, [counsel], I don't see how there could be any discussion about outrageous conduct on the part of these officers.
>
> "[COUNSEL]: We won't argue that today.
>
> "THE COURT: I think that certainly is stretching things, and, unless something you submit to me convinces me that both there is authority for the proposition this failure to terminate the detention as quickly as you might want is indeed a basis for claim, and, secondly, as a factual matter it was still unreasonable — that is, the continued detention, I'm going to go ahead and sign an order for Summary Judgment."

Within the time permitted by the court, plaintiff submitted his counter-affidavit giving his version of the facts and also a memorandum opposing the motion. That memorandum addressed only the false imprisonment count. Defendant's reply addressed only that count. The court then granted defendant's motion on both counts and entered judgment for defendant. On this record, we cannot say that the trial court erred in treating plaintiff as having conceded the motion with respect to the outrageous conduct count. At no point, either in the oral argument or in his memorandum, did plaintiff argue that he had a viable claim on that count.[5]

---

[4] Appellate counsel did not represent plaintiff at the trial level.

[5] If the case had been submitted on affidavits and counter-affidavits, without argument or memoranda, the result might be different. ORCP 47D provides in part:

"* * * When a motion for summary judgment is made and supported as

Affirmed as the count for outrageous conduct; reversed as to the count for false imprisonment, and remanded.

---

provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."