Argued and submitted September 15, 1986, affirmed November 25, 1987, reconsideration denied January 29, petition for review denied February 17, 1988 (305 Or 103)

## STATE OF OREGON,
*Appellant,*

*v.*

## BRUCE EDWARD HARRIS,
*Respondent.*

### (10-85-05652; CA A38717)

745 P2d 813

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Stephen L. Behrends, Eugene, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

NEWMAN, J.

Deits, J., dissenting.

## NEWMAN, J.

Defendant was indicted for driving while revoked and suspended. *Former* ORS 487.560, *now* ORS 811.175. The state appeals a pre-trial order that granted defendant's motion to suppress evidence that Officer Olson of the Eugene police obtained when he stopped defendant's vehicle. ORS 138.060(3). We affirm.

The trial court's findings of fact following the suppression hearing are undisputed. Olson knew that the Eugene police had previously stopped the driver of a vehicle for driving while suspended and that Jenkins had been a passenger in that vehicle. Olson had also previously stopped another vehicle for speeding and excessive noise and had cited the driver for driving while suspended. Although that person was not the same driver as in the former incident, Jenkins again had been a passenger. Then, on June 6, 1985, at about 7 a.m., Olson saw Jenkins get into a pickup on the passenger side. He followed the pickup to see who was driving. He saw the back of the driver's head and shoulders through its rear window. He saw that the driver had brown, collar-length hair but that there was nothing unusual or remarkable about it. He decided to stop the vehicle, because the back of the head of the driver looked like the back of the head of the driver whom he had previously cited for driving while suspended. He stopped the pickup. He did not know whether the individual he had previously cited was still suspended or had been able to obtain reinstatement or an occupational license.

As defendant got out of the pickup and walked toward him, Olson realized that he was not the person that he had previously cited. Olson asked him for his driver's license. Defendant handed him an Oregon I.D. card. Olson then asked him where his driver's license was and he answered that he was suspended. Olson gave him *Miranda* warnings, ran a records check and confirmed that defendant's license was suspended.

The court granted defendant's motion to suppress on the grounds that (1) the stop was unlawful, because Olson did not reasonably suspect that defendant had committed a crime; and (2) after Olson had realized that defendant was not the driver he had cited previously, he had no authority in light of ORS 131.615(3) to make further inquiry. The state argues that

Olson had a reasonable suspicion that defendant was driving while suspended or revoked and that it was permissible to ask for his driver's license. We do not decide if the stop was lawful because, even if it was, the reason for the stop evaporated when Olson saw that defendant was not the driver that he had previously cited. Accordingly, he could not ask defendant for his driver's license.

ORS 131.615 provides:

"(1)    A peace officer who reasonably suspects that a per-. son has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry.

"* * * * *

"(3)    The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

The circumstances that aroused the officer's suspicion must still exist when the officer begins to inquire. As soon as Olson saw defendant get out of his car and walk toward him, he realized that he had not stopped the person whom he thought he was stopping. He had no reason to suspect that defendant's license was suspended. The circumstances which had aroused Olson's suspicion and to which his subsequent inquiry had to be limited no longer existed. Olson's inquiry of defendant about his driver's license was not a "reasonable inquiry" within the meaning of ORS 131.615.

Neither *State v. Fleming,* 63 Or App 661, 665 P2d 1235 (1983), nor *State v. Brister,* 34 Or App 575, 579 P2d 863, *rev den* 284 Or 521 (1978), are to the contrary. In each case, the stop was under *former* ORS 484.350(4)[1] for a traffic infraction and not, as here, under ORS 131.615 for a crime. *Former* ORS 484.350(4) did not contain the limitation on inquiry that ORS 131.615 contains. *See also* ORS 133.072.[2] In *Brister,* we

---

[1] *Amended by* Or Laws 1981, ch 818, § 31, *renumbered* ORS 153.505.

[2] ORS 133.072 also does not contain the language of ORS 131.615. ORS 133.072 provides:

"(1)    When a person has committed a violation as defined in ORS 161.565 in the presence of a peace officer, the officer may issue and serve a citation to the person as provided in ORS 133.066 and 133.065.

"(2)    The peace officer may stop and detain a person for a violation offense for

said:

"[ORS 131.615] is not applicable to stops for traffic infraction violations. In order to stop a person under [ORS 131.615] a police officer must have a reasonable suspicion that the person has committed a *crime*. Crime, as used in this statute, is a felony or a misdemeanor. ORS 131.605(1) and 161.515. The offense for which defendant was stopped in this case is a traffic infraction, not a crime." 34 Or App at 578. (Footnote omitted; emphasis in original.)

Moreover, in *Fleming,* the defendant did not "challenge [the officer's] right to ask him to display his license, but argue[d] only that there was no valid basis for the stop." 63 Or App at 667.

As we said in *State v. Barndt,* 68 Or App 755, 758 n 2, 682 P2d 166 (1984):

"[A]ssuming a permissible stop, the statute limits the scope of inquiry after the stop to the immediate circumstances that aroused the officer's suspicion. ORS 131.615(3). When the officer approached the three men, his concern was whether they were minors possessing alcohol. Once he had determined that they were all of legal age, his reason for the stop had dissipated. At that point, any [inquiry] exceeded permissible limits. He had no basis for asking for the vehicle's registration."[3]

The trial court properly granted defendant's motion to suppress.

Affirmed.

---

the purposes of investigation reasonably related to the violation offense, identification of the person and issuance of a citation to the person.

"(3) A peace officer may detain a person pursuant to this section only for such time as it is reasonably necessary to investigate and verify the person's identity."

[3] In *Walker v. City of Portland,* 71 Or App 693, 698, 693 P2d 1349 (1985), a false imprisonment case, we stated:

"The officers' initial detention of plaintiff was based on a reasonable suspicion that he was the suspect sought for a burglary and an assault; however, once they had determined that he was not that individual, the immediate circumstances that aroused their suspicion dissipated, and any further detention and inquiry was unreasonable. Because plaintiff could not have been lawfully detained solely for the purposes of running a records check on him, it would be incongruous to say that he could be detained for that purpose after any reasonable suspicion regarding his involvement in the crime had dissipated."

**DEITS, J.,** dissenting.

Because I disagree with the majority's disposition, I dissent.

There were sufficient objective facts for Olson to have the requisite reasonable suspicion. He observed that the same person who had been a passenger in the previous cases where he had issued citations was in defendant's car. This fact, taken together with Olson's observation that the defendant's silhouette and length of hair resembled a person whom he had cited earlier for driving while suspended, was sufficient to support a reasonable suspicion that defendant had committed a crime. I would hold that the stop was valid.

I would also hold that Olson's request for identification was proper. ORS 807.570 requires a person to present and deliver a driver's license to a police officer on request when lawfully stopped and detained while driving a vehicle. The officer's right to request a license after a lawful stop does not immediately evaporate when the suspicion that led to the stop no longer exists. *State v. Fleming,* 63 Or App 661, 665 P2d 1235 (1983); *State v. Brister,* 34 Or App 575, 579 P2d 863, *rev den* 284 Or 521 (1978).[1] Contrary to the majority's assertion, the fact that the stops in *Brister* and *Fleming* were under ORS 484.350(4) for traffic infractions and not, as here, under ORS 131.615 for crimes, is irrelevant. Statutes on the same subject should be construed as consistent with each other, whenever possible. *Davis v. Wasco IED,* 286 Or 261, 272, 593 P2d 1152 (1979). The specific provisions of ORS 807.570, allowing an officer to request a license, should be read together with ORS 484.350(4) and ORS 131.615.

---

[1] The court decided *Brister* on a Fourth Amendment issue. However, because ORS 131.615 was intended as a partial codification of *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), which was decided under the Fourth Amendment, a similar analysis would be applicable under ORS 131.615.