Argued and submitted February 29, resubmitted In Banc September 8, reversed and remanded November 9, 1988, reconsideration denied January 13, petition for review allowed February 14, 1989 (307 Or 405)
See later issue Oregon Reports

## STATE OF OREGON,
### *Appellant,*

*v.*

## PATRICK E. FARLEY,
### *Respondent.*

(87-7105, 87-03-103; CA A45512)

764 P2d 230

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane L. Alessi, Salem, argued the cause for respondent. On the brief were Gary D. Babcock, Public Defender, Salem, and Henry M. Silberblatt, Salem.

ROSSMAN, J.

Warden, J., dissenting.

**ROSSMAN, J.**

In this prosecution for driving while suspended, ORS 811.175, and driving without insurance, ORS 806.010, the state appeals from the trial court's order suppressing evidence obtained after a stop of defendant's vehicle. We reverse.

Defendant was stopped because his vehicle had no visible license plates, an apparent traffic infraction. ORS 803.540. While talking with defendant, the officer saw a valid temporary vehicle permit posted on defendant's windshield; that permit allowed defendant to operate the car without license plates. ORS 803.540(2)(a). The officer explained the reason for the stop and asked defendant for his driver's license. Defendant presented his license and told the officer that he had no insurance. The officer ran a DMV check on defendant's license; on the basis of information thus obtained, he cited defendant for driving while suspended. He also cited defendant for driving without insurance. At the hearing, the officer could not recall whether he saw the permit before or after he asked for defendant's license. The trial court held that, once the officer had observed the valid temporary permit, he had no authority to make any further inquiry regarding defendant's operator's license.

The state has relied on *State v. Brister,* 34 Or App 575, 579 P2d 863, *rev den* 284 Or 521 (1978), and *State v. Fleming,* 63 Or App 661, 665 P2d 1235 (1983), for the proposition that a police officer investigating an apparent traffic infraction has authority to request a motorist to display a driver's license even after the officer discovers that no infraction actually occurred. In those cases, however, the court viewed an officer's authority to make traffic stops as inherent in the power to arrest. Thus, a traffic stop was justified where the officer had probable cause to believe that an infraction had occurred. *Former* ORS 484.350(4). The court also relied on *former* ORS 482.040(2)(b), which required drivers to "display" their licenses to peace officer "on demand." Because different statutory provisions now apply, *Brister* and *Fleming* no longer control.

ORS 810.410(3), ORS 153.110(3) and ORS 807.570 now govern the stop and detention of drivers for traffic infractions. ORS 810.410(3) provides, in part:

"A police officer:

"(a) Shall not arrest a person for a traffic infraction.

"(b) *May stop and detain* a person for a traffic infraction *for the purposes of investigation reasonably related to the traffic infraction, identification* and issuance of citation." (Emphasis supplied.)

ORS 153.110(3) provides:

"Any person authorized to issue citations pursuant to this section may not arrest for violation of the infraction but may detain any individual reasonably believed to have committed a violation, * * * only so long as is necessary to determine, for the purposes of issuing a citation, the identity of the violator and *such additional information as is appropriate for law enforcement agencies in the state.*" (Emphasis supplied.)

ORS 807.570 provides, in pertinent part:

"(1) A person commits the offense of failure to carry a license or to present a license to a police officer if the person either:

"* * * * *

"(b) Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances:

"(A) Upon being lawfully stopped or detained when driving a vehicle.

"* * * * *."

In this case, the officer stopped defendant "for the purposes of investigation reasonably related to the [apparent] traffic infraction." Because "the facts relied upon by the officer, when viewed objectively, provided probable cause to believe that that traffic infraction had been committed," the initial stop clearly was valid. *State v. Doherty,* 92 Or App 105, 107, 757 P2d 860, *rev den* 306 Or 660, 763 P2d 152 (1988); ORS 810.410(3). "Having made a lawful stop, [the officer] could ask defendant to show his driver's license." *State v. Auer,* 90 Or App 459, 463 n 3, 752 P2d 1250 (1988); ORS 807.570. That authority continued despite the officer's discovery that the

traffic infraction that he was investigating had not actually occurred.[1]

ORS 153.110(3) does not require otherwise. Because the officer reasonably believed defendant to have committed a traffic violation, the statute permitted him to detain defendant long enough to determine his identity and "such additional information as is appropriate for law enforcement agencies in this state."[2] Given the difficulty of ascertaining a driver's compliance with licensing laws, checking a license to see whether it is revoked or suspended is appropriate "additional information" for law enforcement agencies to obtain pursuant to a lawful stop.

---

[1] We have never held to the contrary. *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984), did not deal with a stop based on a traffic infraction, but with a stop based on probable cause to believe a motorist had committed a *crime.* Similarly, *State v. Messer,* 71 Or App 506, 692 P2d 713 (1984), involved ORS 131.615, which requires that police, in order to make a stop, must have a reasonable suspicion that a person has committed a *crime.* Because different statutes apply to stops for suspected crimes and stops for traffic violations, these cases do not bear on the issue in this case. *State v. Painter,* 296 Or 422, 427, 676 P2d 309 (1984). For other cases involving the validity of stops made under ORS 131.615, *see State v. Harris,* 88 Or App 433, 745 P2d 813 (1987), *rev den* 305 Or 103 (1988); *State v. Barndt,* 68 Or App 755, 758 n 2, 683 P2d 166 (1984).

The motorist's duty to present a license under ORS 807.570(1)(b)((A) arises only where the initial stop is valid. The presence of a valid stop in this case thus distinguishes it from *State v. Painter, supra,* 296 Or at 428; *State v. Starr,* 91 Or App 267, 270, 754 P2d 618 (1988); and *State v. Hart,* 85 Or App 174, 176, 735 P2d 1283 (1987).

[2] The dissent misconstrues ORS 153.110(3) as a direct legislative limitation on an officer's authority to request a driver's license under ORS 807.570. At best, ORS 153.110(3) is ambiguous on the issue of whether, once a motorist is "reasonably believed to have committed a violation," the officer may request identification and other appropriate information. Rules of statutory construction and legislative history thus become relevant as extrinsic evidence of legislative intent. *See Sager v. McClendon,* 296 Or 33, 40, 672 P2d 697 (1983).

The legislature did not intend ORS 153.110(3) to restrict an officer's authority to request a driver's license after making a lawful stop. On the contrary, its purpose in passing ORS 153.110(3) was to permit certain state park employees to issue citations for violation of park regulations without giving them full powers of arrest and detention. *See* Minutes, Senate Committee on Justice (July 20, 1981—remarks of Senator Glenn Otto); Exhibit A, HB 2046, House Judiciary Committee, Subcommittee 1 (April 7, 1981—written remarks of Bill Nessly).

Moreover, where two statutes applicable to the same subject cannot be harmonized, the specific should prevail over the general. *See Pioneer Trust Bank v. Mental Health Division,* 87 Or App 132, 135, 742 P2d 51 (1987); *Steamboaters v. Winchester Water Control Dist.,* 69 Or App 596, 599, 688 P2d 92 (1984), *rev den* 298 Or 553 (1985). Even if we accept the dissent's argument that the two statutes require different outcomes, ORS 807.570, which specifies the circumstances under which an officer may request to see a motorist's driver's license, should prevail over the more general language of ORS 153.110(3).

Reversed and remanded.

**WARDEN, J.,** dissenting.

The majority carefully slides by the crucial fact in this case: there is no evidence that, *at the time the officer asked defendant for his driver's license,* the officer reasonably believed that defendant had committed a violation.[1] Because the *only* statutory authority for the officer to stop defendant or to ask for his license requires that the officer have such a reasonable belief, the officer's authority disappeared along with the belief. The trial court correctly suppressed all evidence that resulted from the unauthorized request. Because the majority holds otherwise, I dissent.

There are two potential statutory sources of authority for the officer to ask defendant for his license, ORS 153.110(3) and the combination of ORS 807.510 and ORS 810.410(3). Neither permits the officer to continue to detain a person or to request a driver's license or other identification after any reasonable belief that a violation was committed has evaporated.

ORS 153.110(3) provides:

"Any person authorized to issue citations pursuant to this section may not arrest for violation of the infraction but *may detain any individual reasonably believed to have committed a violation,* or any employe, agent or representative of a firm, corporation or organization reasonably believed to have committed a violation, *only so long as is necessary to determine, for the purposes of issuing a citation,* the identity of the violator and such additional information as is appropriate for law enforcement agencies in the state." (Emphasis supplied.)

It is questionable, as the majority notes, whether this statute even applies to officers making traffic stops. *See* 93 Or App at 727 n 2.[2] Assuming that it does apply, it establishes clear

---

[1] The officer could not remember whether he asked for defendant's identification before or after he discovered the temporary permit on the windshield. Since this was a warrantless search, the burden of proof that the officer made the discovery after asking for the license was on the state, and the officer's testimony was insufficient to carry it. ORS 133.693(4).

[2] The majority's comments on the legislative history it describes are curious, to say the least. The issue is not whether ORS 153.110(3) *restricts* the authority of an officer making a traffic stop; rather, the question is whether it *grants* the officer any authority. If it grants authority, the grant is limited to that stated in the statute. Without a statutory grant of authority the officer would have none at all.

limits to its grant of authority. As the emphasized portions show, the *only* reason an officer may detain a person to determine the person's identity is in order to issue a citation. That restriction necessarily requires that the person be someone who the officer reasonably believes has committed a violation. If the officer does not believe that there was a violation, the officer has no authority to detain a person. If the officer's original belief that there was a violation ceases to have a reasonable basis, the authority necessarily disappears. *See State v. Flores,* 68 Or App 617, 637 n 10, 685 P2d 999, *rev den* 298 Or 151 (1984).[3] That is what happened in this case.

Once the officer saw the temporary vehicle permit, his authority to detain defendant or to request his driver's license disappeared. It is hard to imagine how the legislature could more clearly have limited the officer's authority than it did in ORS 153.110(3). The officer could ask defendant for identification only if he intended to issue a citation, which the officer clearly could not do after he discovered that the apparent violation was not, after all, a violation. Any other conclusion would permit the police to deprive persons of their liberty without legal authority for doing so. The majority provides no rationale to support its conclusion.

ORS 810.410(3) and ORS 807.570 do apply to traffic stops, whether or not ORS 153.110(3) does. The result under them is, however, the same: the officer has no authority if the officer does not believe that there was a violation. ORS 810.410(3) provides, in pertinent part:

"A police officer:

"* * * * *

"(b)   may stop and detain a person for a traffic infraction *for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation.*" (Emphasis supplied.)

ORS 807.570(1)(b)(A) provides that a person commits the

---

[3] In *State v. Flores, supra,* the officer arrested the defendant for possession of a controlled substance. The probable cause for the arrest was primarily based on the officer's reasonable belief that the defendant was holding a bag of marijuana concealed in his hand. We noted in *dictum* that if the officer, upon seizing the bag, had discovered that its contents were "an innocent substance" he would have lost the probable cause for the arrest and therefore would have had no authority to search further incident to the arrest. 68 Or App at 637 n 10.

offense of failure to carry a license or failure to present a license if the person fails to present and deliver the license when requested to do so *"[u]pon being lawfully stopped or detained when driving a vehicle."* (Emphasis supplied.)

Under ORS 810.410(3), the purpose for the stop and detention must be reasonably related to a traffic infraction; the purpose of seeking identification is to issue the citation. If there is no infraction, there can be nothing reasonably related to it, and there can be no citation. There can also be no failure to present and deliver the license upon being lawfully stopped, because there is no lawful stop. Once the officer discovered that defendant had not committed an infraction, the officer should have allowed him to go his way. Any evidence he obtained thereafter must be suppressed. The majority wrongly holds otherwise, and I therefore dissent.

Warren, Newman and Graber, JJ., join in this dissent.